Dunkin, Ch.
If to grant or refuse this petition were entirely a matter of discretion with the presiding Chancellor, it seems to the Court that it was properly exercised. The case of Shubrick v. Shubrick, (1 M‘C. C. R. 406,) sustains the principle.
*234 But when the court of chancery undertakes to administer assets, and restrain proceedings at law, it may rather be regarded as a matter of course, if not of right, for a creditor to be permitted to prove his claim at any time while the fund remains within the custody of the court. The practice is briefly stated by Lord Chancellor Eldon, in Gillespie v. Alexander, (3 Russell, 130,) “although the language of the decree, where an account of debts is directed, is, that those who do not come in, shall be excluded from the benefit of that decree; yet the course is to permit a creditor, he paying the costs of the proceedings, to prove his debt, so long as there happens to be a residuary fund in court, and to pay him out of that residue.” In that case, a final decree had been made, the fund apportioned, a part of it had been paid over, and the remainder had been carried to the account of particular legatees, and was standing in the name of the accountant general, to the credit of the cause. Some months afterwards a petition was filed on the part of the creditor, praying permission to establish his debt, which was allowed, and a report made by the master of the amount due to him. Ho then applied that so much of the fund standing in the name of the accountant general as was necessary to satisfy his debt, might be paid over to him. It was resisted on the ground that it was the duty of the creditor to have applied to the court, in order to prevent any of the legacies from being paid, till-his demand was satisfied. But the master of the rolls determined that he was entitled to have his whole debt paid from the funds of the different legatees, whose legacies still remained in court. An appeal was taken from this order.
Lord Eldon had not delivered the final judgment, says the reporter, when he resigned the great seal; but, after he quitted office, the parties having consented to be bound by his opinion, his Lordship determined that the legatees, whose funds remained in court, ought to be considered as between themselves, and a creditor not coming in sooner, as not liable to pay him wholly out of what had been carried to their account, but only to pay him a due proportion of the debt; and that he must seek the payment of the rest of his debt, in proper proportions, against those who had been actually paid.
*235 In the case of Greig v. Somerville, decided in 1830, (Russell & Mylne, 338,) the Russian Consul in London, had died intestate in 1807. A bill having been filed to have the usual accounts taken, and the master having reported that he had caused advertisements to be published in the London Gazette and certain newspapers, for creditors, but that no creditor had come in and proved any debt, a decree was made in June 1817, under which the costs were p>aid, and the whole of the fund apportioned and distributed. But one of the parties being an infant, his share, amounting to four-ninths of the fund, was retained and carried to his separate account. In March 1825, an application was made, by petition, on behalf of the embassador of the emperor of Russia, praying for leave to go before the master, and prove a debt alleged to be due from the intestate, to the emperor. In the course of the argument, it seemed to he conceded, on authority cited, that a bona fide creditor could not be concluded by the advertisements in the gazette and the London newspapers, nor by a decree on further directions. The principle objection was, that the share had been appropriated eight years before any claim was suggested, although the fund was still within the control of the court. The petition was allowed; but in conformity with the decision of Lord Eldon, in Gillespie v. Alexander, Lord Lyndhurst determined, that under the circumstances, it would be unreasonable and unjust, that the share remaining in court should be charged with the whole debt. The decree directed that “the em-bassador of the emperor of Russia should be at liberty, on behalf of the emperor, to go before the master and prove such debt due from the intestate to his imperial majesty, as he might be able; and that the personal representative of the intestate, upon such proof, should have the benefit of any defence which he could have made, if bis- imperial majesty had filed a hill for the purpose of obtaining payment of the said debt, out of the assets of the said intestate; and that so much of the fund as should be equal to four-ninths of the debt claimed, should be retained until the report of the master,” &c.
In the course of the argument of the case at -bar, it seemed to be supposed that the creditor would not be obliged to make oath *236 to the amount of his demand. If this practice exist, it is certainly irregular. According to the course of the English Chancery, when assets are to be administered, all claims, including judgments, &c. must be rendered on oath; and this is also the approved mode in this country. A creditor presenting his claim to the commissioner, under notice, should make an affidavit of the debt, and that he is aware of no discount, or if there are mutual demands, a balance should be struck and sworn to. It need scarcely be remarked that this is not intended to supersede the necessity of the ordinary proof of the debt, but is suppletory thereto.
The motion to reverse the order of the circuit courtis dismissed.